**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 18-cv-02899-STV

ANDREA M. BLUEL, as the Executrix of the Estate of,
LARRY J. BLUEL, deceased,

    Plaintiff,

v.

BNSF RAILWAY COMPANY, f/k/a Burlington Northern and Santa Fe Railway Company,

    Defendant.

_____

**ORDER**
_____

Magistrate Judge Scott T. Varholak

    This matter comes before the Court on Defendant's Motion for Summary Judgment [#45] (the "Motion"). The Motion is before the Court on the parties' consent to have a United States magistrate judge conduct all proceedings in this action and to order the entry of a final judgment. [##14, 15] This Court has carefully considered the Motion and related briefing, the entire case file, and the applicable case law, and has determined that oral argument would not materially assist in the disposition of the Motion. For the following reasons, the Motion is **DENIED**.

**I.    BACKGROUND**

    The undisputed facts are as follows.[1] Decedent, Larry J. Bluel ("Decedent"), was employed by BNSF Railway Company ("BNSF") and its predecessor in interest,

---

[1] The undisputed facts are drawn from the Separate Statement of Facts filed with Defendant's Motion for Summary Judgment (the "Defendant's Statement of Facts"). [#51] The Court refers to the sequentially numbered facts set forth in the Defendant's Statement

Burlington Northern, from May 1974 through December 2013 as a track laborer and machine operator. [#51, DSOF1] Plaintiff is Decedent's adopted daughter and the Executrix of Decedent's estate. [*Id.* at DSOF17; #49-1 at 11] BNSF is a common carrier by railroad and its liability is governed by the Federal Employers' Liability Act, 45 U.S.C. § 51, *et seq.* ("FELA"). [#51, DSOF2]

Plaintiff seeks damages pursuant to FELA related to Decedent's death. [*Id.* at DSOF3] Specifically, Plaintiff claims that during Decedent's work for BNSF and its predecessors, Decedent was exposed to "diesel exhaust/fumes/benzene from diesel powered on-track equipment and [] creosote from railroad ties." [*Id.* at DSOF4] Plaintiff claims these exposures occurred "by touch, inhalation or consumption" and caused Decedent to develop colon cancer. [*Id.* at DSOF5]

A Statement of Sickness completed by Decedent's physician indicates that Decedent became sick on December 2, 2013 and provides a diagnosis of adenocarcinoma of the colon. [#45-4] On December 3, 2013, Decedent was hospitalized with increasing diarrhea for more than a year. [#51, DOSF12] That same day, a CT scan of Decedent's pelvis revealed "a large rectosigmoid mass tumor until proven otherwise." [*Id.* at DSOF14] Surgical pathology from December 4, 2013 revealed a "well to moderately differentiated adenocarcinoma with colorectal primary." [*Id.* at DSOF15]

Hospital records from that time period reflect that "[o]ver the past few months [Decedent] ha[d] developed fecal incontinence, abdominal pain, significant weight loss with anorexia, [and] bright red blood per rectum." [*Id.* at DSOF12] During her deposition,

---

of Facts as "DSOF#." The Court periodically cites directly to the exhibits cited by the parties to provide additional context.

Plaintiff testified that Decedent had been experiencing those and other symptoms for "about a year" before he sought medical care. [*Id.* at DSOF13] Decedent died on December 5, 2016. [*Id.* at DSOF 16]

During her deposition, when asked whether Decedent had said whether he was exposed to any hazardous substances at work, Plaintiff responded:

> [H]e became sick from things in his lungs. He would cough a lot and things like that. He knew it was from the things that he was inhaling when he was on the machines. . . . [H]e would come home being covered in very dark soot or whatever that was, he would have issues with his breathing. [I]t would definitely affect his lungs, and he would be coughing. And he would indicate to us it was because of what he was breathing in at work.

[*Id.* at DSOF6] Plaintiff further explained that Decedent had worked with railroad ties and that the ties were covered in creosote, a suspected carcinogen. [#49-1 at 34] Plaintiff also testified that Decedent had worked in the railyard and while working there had been exposed to materials containing asbestos, another suspected carcinogen. [*Id.* at 35] Decedent did not talk to Plaintiff about these particular exposures, though he did talk to Plaintiff about working on the ties. [*Id.* at 35, 42]

Decedent regularly came home from work smelling of diesel exhaust and wearing dirty, sooty clothing that had to be washed separate from other laundry. [#51, DSOF8] On September 15, 1998, Decedent signed a Respiratory and Health History Questionnaire in which he disclosed "frequent exposure" to "lead fumes or dust," "chemical fumes or vapors," and "engine exhaust." [*Id.* at DSOF9] In that same questionnaire, Decedent stated that he was exposed to diesel fumes and exhaust as a machine operator. [*Id.*] On March 18, 1999, Decedent signed another Respiratory and Health History Questionnaire in which he again disclosed "frequent exposure" to "chemical fumes or vapors" and "engine exhaust." [*Id.* at DSOF10]

3

Plaintiff initiated this action on November 12, 2018. [#1] Plaintiff's Amended Complaint asserts a FELA claim alleging that Decedent's cancer was the result of Defendant's negligence. [*See generally* #33] On May 22, 2020, Defendant filed its Motion for Summary Judgment, arguing that Plaintiff's claims are barred by FELA's three-year statute of limitations. [*See generally* #45] Plaintiff has responded to the Motion [#49] and Defendant has filed a reply [#50].

## II.     STANDARD OF REVIEW

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter–Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994). The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact, which the movant may do "simply by pointing out to the court a lack of evidence . . . on an essential element of the nonmovant's claim" when the movant does not bear the burden of persuasion at trial. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670–71 (10th Cir. 1998). If the moving party bears the burden of proof at trial, "the moving party must establish, as a matter of law, all essential elements of the [claim or affirmative defense on which summary judgment is sought] before the nonmoving party can be obligated to bring forward any specific facts alleged to rebut the movant's case." *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008). In other words, the moving party "must support its motion with credible evidence showing that, if uncontroverted, the moving party would be entitled to a directed verdict." *Rodell v. Objective Interface Sys., Inc.*, No.

14-CV-01667-MSK-MJW, 2015 WL 5728770, at *3 (D. Colo. Sept. 30, 2015) (citing *Celotex Corp.*, 477 U.S. at 331). If the movant carries its initial burden, the burden then shifts to the nonmovant "to go beyond the pleadings and set forth specific facts that would be admissible in evidence in the event of trial." *Adler*, 144 F.3d at 671 (quotation omitted).

"[A] 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury. *See Anderson*, 477 U.S. at 248–49; *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000); *Carey v. U.S. Postal Serv.*, 812 F.2d 621, 623 (10th Cir. 1987). Evidence, including testimony, offered in support of or in opposition to a motion for summary judgment must be based on more than mere speculation, conjecture, or surmise. *Bones v. Honeywell Int'l Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party. *Anderson*, 477 U.S. at 248. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). In reviewing a motion for summary judgment, the Court "view[s] the evidence and draw[s] reasonable inferences therefrom in the light most favorable to the non-moving party." *See Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

**III.     Analysis**

Defendant argues that Plaintiff's claims are barred by FELA's three-year statute of limitations.  [*See generally* #45]  According to Defendant, by the time of his cancer diagnosis on December 4, 2013, Decedent was aware of both his injury and its work-relatedness.  [*See id.*]  Thus, Defendant argues Decedent had until December 4, 2016 to file his FELA claim.  [*See id.*]  According to Defendant, by the time Decedent died on December 5, 2016, the three-year statute of limitations had expired.  [*See id.*]  Thus, Defendant maintains that the instant suit is likewise time-barred.[2]  [*See id.*]

FELA is a "remedial and humanitarian" statute that permits railroad workers to recover for injuries caused by the negligence of their employers or fellow employees.  *Matson v. Burlington N. Santa Fe R.R.*, 240 F.3d 1233, 1235 (10th Cir. 2001).  To maintain a claim under FELA, the plaintiff must allege and prove that the action was filed "within three years from the day the cause of action accrued."  45 U.S.C. § 56; *see also Rohner v. Union Pac. R.R. Co.,* 225 F.2d 272, 274 n. 7 (10th Cir.1955).  "FELA does not define

---

[2] Courts have held that FELA establishes two separate and distinct causes of action: (1) the decedent's cause of action for personal injury; and (2) the personal representative's wrongful death action. *Davis v. CSX Corp.,* No. 1:10CV74, 2011 WL 6740547, at *3 (N.D.W. Va. Dec. 21, 2011); *McGhee v. Chesapeake & Ohio R. Co.,* 173 F. Supp. 587, 590 (W.D. Mich. 1959). These courts have determined that the wrongful death action accruing to the surviving dependents is "derivative and dependent upon the continuance of a right in the injured employee at the time of his death." *McGhee*, 173 F. Supp. at 590. As a result, "the personal representative of a decedent is barred from instituting an action for wrongful death because of the statute of limitations contained in § 56 only if such statutory three year period expires during the lifetime of the decedent." *Id.*; *see also Davis*, 2011 WL 6740547, at *3. Here, however, Defendant maintains that the statute of limitations began to run no later than December 4, 2013, and thus had expired by the time of Decedent's death on December 5, 2016. [*See generally* #45] Defendant relies only upon the December 4, 2013 date and does not argue that some other event (or further diligence) between December 4, 2013, and November 12, 2015 (three years before Plaintiff filed the instant action) would have begun the accrual period.

when a cause of action accrues, but it is often clear from the nature of the injury when the statute of limitations starts to run." *Matson*, 240 F.3d at 1235. "For example, '[c]ases which involve a traumatic injury or a single breach of duty and an immediately manifest injury pose little difficulty in determining the commencement of the limitations period.'" *Id.* (*quoting Nat'l R.R. Passenger Corp. v. Krouse,* 627 A.2d 489, 493–94 (D.C.App.1993)).

As the Tenth Circuit has acknowledged, however, the accrual issue is "[m]ore problematic [in] cases involving latent injuries which cannot be discovered immediately or those where the injury has an indefinite onset and progresses over many years unnoticed." *Id.* (quotation omitted). "To avoid the harshness of applying a strict limitations period that could theoretically require a plaintiff to file suit before a latent injury manifested itself, the Supreme Court has crafted a 'discovery rule' for determining when a federal cause of action accrues." *Id.* (citing *United States v. Kubrick,* 444 U.S. 111, 121–23 (1979); *Urie v. Thompson,* 337 U.S. 163, 168–71 (1949)). Under this rule, a federal "statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action." *Indus. Constructors Corp. v. United States Bureau of Reclamation,* 15 F.3d 963, 969 (10th Cir.1994). "This rule imposes on plaintiffs an affirmative duty to exercise reasonable diligence and investigate the cause of a known injury." *Matson*, 240 F.3d at 1235.

Here, Plaintiff does not appear to challenge the first prong of the discovery rule—whether the undisputed facts demonstrate that Decedent knew or had reason to know of the existence of his cancer by December 4, 2013—and the Court will therefore focus on the second prong, whether Decedent knew or had reason to know of the cause of the

7

cancer.[3]  With respect to that second factor, the Court concludes that a rational jury could determine that Decedent did not know or have reason to know that his colon cancer was work-related three years prior to his death.  Though Decedent first became sick around the beginning of 2013, he was not diagnosed with cancer until December 3 or 4, 2013.  He passed away on December 5, 2016.  As a result, to be barred by the three-year statute of limitations, the Court would need to conclude that Decedent, as a matter of law, should have linked his cancer diagnosis to his railway work within a day or two of receiving the diagnosis.[4]  *See Bayless v. United States*, 767 F.3d 958, 967-68 (10th Cir. 2014) (finding that, despite her suspicions over sixteen years, a claimant suffering from a mysterious debilitating illness did not know, or have reason to know, that her illness was caused by exposure to nerve gas until she received results of a test that caused her doctor to

---

[3] The Court is not entirely convinced that Defendant has met its burden of showing that no reasonable juror could conclude that Plaintiff did not know, or have reason to know, of his colon cancer by December 4, 2013.  Defendant has presented uncontradicted evidence that on December 3, 2013, Decedent was hospitalized with increasing diarrhea that he had been having for more than a year. [#51, DOSF12]  In addition to the diarrhea, for approximately one year Decedent had been experiencing abdominal pain, significant weight loss with anorexia, and rectal bleeding. [*Id.* at DSOF12, 13]  A December 3, 2013 CT scan of Decedent's pelvis revealed "a large rectosigmoid mass tumor until proven otherwise." [*Id.* at DSOF14]  The next day, surgical pathology revealed a "well to moderately differentiated adenocarcinoma with colorectal primary." [*Id.* at DSOF15]  Thus, by December 4, 2013, Decedent's treating physicians knew or had reason to know that Decedent had cancer.  But there is no indication in this record that the doctors informed Plaintiff of this diagnosis on December 4, 2013.  And, as indicated above, Decedent's death on December 5, 2016, may have restarted the statute of limitations as to Plaintiff's claims, provided that the statute had not already expired.  *See supra* n. 2.  Thus, if it took the doctors a day or two to inform Decedent of the cancer diagnosis, the statute of limitations may not have expired before Decedent's death.  But Plaintiff does not make this argument and, in any event, as detailed below, the Court concludes that genuine issues of fact exist as to the second prong of the discovery test.  Accordingly, the Court need not determine whether Decedent knew (through his cancer diagnosis) or had reason to know (through his symptoms) of his colon cancer by December 4, 2013.
[4] Again, assuming his doctors immediately conveyed the diagnosis to Decedent.  *See supra* n. 3.

diagnose her with toxic encephalopathy from exposure to toxins in the workplace).  The Court cannot so conclude.

"There are many suspected causes of cancer, many of which are natural or non-negligent and would not give rise to a legal cause of action."  *Maughan v. SW Servicing, Inc.*, 758 F.2d 1381, 1385 (10th Cir. 1985).  "Thus a potential plaintiff, on learning that he has cancer, lacks the usual incentive to investigate the possibility that the known injury may give rise to a legal claim."  *Id.*  "In addition, even if he attempts to determine the cause of the disease, he is confronted with a mass of complex, controversial and rapidly changing scientific data and opinions."  *Id.*; *see also O'Connor v. Boeing N. Am., Inc.*, 311 F.3d 1139, 1150 (9th Cir. 2002) (same).

Here, it is undisputed that as early as 1998 Decedent was aware that his work frequently exposed him to "lead fumes or dust," "chemical fumes or vapors," and "engine exhaust."  [#51, DSOF9]  It is further undisputed that Decedent linked this exposure to his coughing and breathing problems.  [*Id.* at DSOF6]  But the Court cannot conclude, as a matter of law, that Decedent should likewise have immediately linked his colon cancer diagnosis to the fumes, exhaust, and particles he had been exposed to at work.

Nor can the Court conclude that Decedent's exposure to creosote and asbestos should have caused Decedent to immediately conclude that his cancer diagnosis was related to his prior work for Defendant.  Defendant has not presented any facts—let alone undisputed facts—demonstrating that Decedent knew that he had been exposed to creosote or asbestos.  Indeed, while Decedent talked to Plaintiff about working on the railway ties, he did not talk to her about any exposure to creosote or asbestos.  [#49-1 at 35, 42]

9

In *Greger v. Union Pac. R.R. Co.*, the District of Nebraska denied summary judgment premised on a statute of limitations argument under facts similar to those in the instant case. No. 8:18CV577, 2020 WL 3489521, at *3-5 (D. Neb. June 26, 2020). There, the plaintiff was diagnosed with renal cancer on June 30, 2010. *Id.* at *1. He suspected that it could have been from his railroad work. *Id.* at *1-2. He also knew that inhaling diesel fuel was not good for him but did not know that such inhalation caused cancer. *Id.* at *2. By November 26, 2012, the plaintiff's cancer had metastasized and spread to his adrenal gland. *Id.* The plaintiff filed his FELA claim on December 13, 2018, after seeing a law firm advertisement linking cancer to railroad work. *Id.* at *1-2.

In denying the defendant's summary judgment motion, the *Greger* court reasoned:

> The evidence presently before the Court does not show conclusively that the plaintiff was aware of the critical fact that his work on the railroad could have caused his renal (and subsequently adrenal) cancer during the time between his diagnosis in 2010 and the limitations date of December 13, 2015, so as to be barred by the statute of limitations. His deposition testimony is equivocal and/or contradictory at best and establishes only that he knew some aspects of his work over forty-six years may have been bad for his health. That is different than having knowledge of the fact that exposures at work caused his cancer. The defendant has not shown that Greger was ever informed by a doctor, or by anyone, that there was a connection between his work on the railroad and his development of renal cancer.

*Id.* at *5. Here, too, Defendant has not provided any evidence that Plaintiff was told by doctors that his cancer was work-related. Moreover, while Plaintiff may have known he was exposed to some potentially harmful materials at work—materials that he believed may have contributed to his cough—Defendant has not shown that "there was publicly available information, notoriety, news reports, publicity, or knowledge from other sources linking [colon] cancer to the sort of environmental exposures [Decedent] had so as to prompt further inquiry." *Id.* Based on this record, the Court cannot conclude as a matter

of law that Plaintiff should have associated his cancer diagnosis with his work for Defendant within a day or two of receiving his cancer diagnosis, or that he should have conducted any further investigation in those two days to discover the source of his cancer. Accordingly, Defendant's Motion is **DENIED**.

## IV.     CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment [#45] is **DENIED**.  A status conference is set for October 1, at 11:00 a.m.

DATED:  September 2, 2020                                         BY THE COURT:

s/Scott T. Varholak
United States Magistrate Judge
